**Hollister GEORGE, Petitioner,**

v.

**W.J. SULLIVAN, Respondent.**

**No. 1:08–CV–132 AWI MJS (HC).**

United States District Court,
E.D. California.

June 15, 2010.

spectfully declines to adopt the Magistrate Judge's F & R, and will instead grant George's petition.

## BACKGROUND

### Commitment Offense [1]

On November 28, 1989, Officer Garcia ("Garcia") approached George and three friends in an area known for drug sales. Garcia observed a sawed off shotgun in the vehicle and called for backup. George's friend, Armendariz, assaulted Garcia, which caused both men to roll down an embankment. Garcia was wrestling with Armendariz, and Armendariz was trying to get a hold of Garcia's service revolver. The two continued to wrestle together as Garcia tried to prevent Armendariz from removing his gun. Armendariz yelled at George to "shoot the pig." Garcia then observed George holding the shotgun and pointing the weapon at him. Armendariz continued yelling at George to shoot and continued to struggle with Garcia for control of the revolver. Garcia looked back up the hill and observed George shooting. Garcia saw a flash and heard the discharge of a weapon. When Garcia realized that he was not struck, he bit Armendariz's arm, which caused Armendariz to release his grip on Garcia's revolver. Garcia then obtained control of the revolver and shot and killed Armendariz. Backup officers arrived at the scene and arrested George for attempted murder. While at the police station, George provided a blood sample that later tested positive for PCP and methamphetamine. George was 17 years old at the time of this incident.

### State Court Proceedings

A jury convicted George of second degree murder, possession of a sawed-off

Kasey Elizabeth Jones, Attorney General's Office of the State of California, Sacramento, CA, for Respondent.

Hollister George, Corcoran, CA, pro se.

ORDER DECLINING TO ADOPT AMENDED FINDINGS AND RECOMMENDATION [Doc. # 19]

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

ORDER DIRECTING CLERK TO ENTER JUDGMENT

ANTHONY W. ISHII, Chief Judge.

Petitioner Hollister George ("George") is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. George challenges the February 15, 2007, denial of a parole date by the California Board of Parole Hearings ("BPH").

The Magistrate Judge issued a Findings and Recommendation ("F & R") on January 27, 2010, that recommended the petition be DENIED with prejudice and that the Clerk be DIRECTED to enter judgment. The F & R was served on all parties and contained notice that any objections were to be filed within thirty (30) days of the date of service of the order.

On February 17, 2010, Petitioner filed objections to the F & R. In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C), this Court has conducted a *de novo* review of the case. Having carefully reviewed the entire file and having considered the objections, the Court re-

---

1. This background is taken almost verbatim from the transcript of the BPH hearing, and was agreed to by Petitioner.

shotgun, and attempted murder. *See* Objections Exhibit B. George was sentenced to a term of 15 years to life, plus two additional years for possession of the shotgun, for a total sentence of 17 years to life. *See id.* George was committed to custody in 1991. *See* Objections Exhibits A, B. In August 1994, the Court of Appeal stayed the additional two-year sentence as a violation of Penal Code § 654, but did not remand the case.[2] *See* Objections Exhibit B. George's sentence is thus 15 years to life for second degree murder. *See People v. Miller,* 18 Cal.3d 873, 886, 135 Cal.Rptr. 654, 558 P.2d 552 (1977); Objections Exhibits A, B.

### State Habeas Corpus Denial

The last reasoned opinion by any California Court was by the Riverside County Superior Court. That decision reads: "The offense involved great violence and an extremely serious attack with a firearm upon a police officer by the inmate. Petitioner's cohort was killed by the police officer after he was fired upon by the inmate. Sufficient evidence supports the board action." Answer Exhibit 2.

### LEGAL STANDARD

■ When a petitioner is imprisoned from a state court adjudication and files a federal habeas petition after April 24, 1996, AEDPA governs and a court will not issue a writ of habeas corpus unless it is shown that the state court decision denying relief was "contrary to, or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1); *Irons v. Carey,* 505 F.3d 846, 850 (9th Cir.2007); *Sass v. California Bd. of Prison Terms,* 461 F.3d 1123, 1127 (9th Cir.2006). For California parole cases, "federal habeas courts must accord due deference to the state court decision and thus must determine whether the California judicial decision approving the governor's [or the parole board's] decision rejecting parole was an 'unreasonable application of the California' 'some evidence standard' or was 'based on an unreasonable determination of the facts in light of the evidence.'" *Cooke v. Solis,* 606 F.3d 1206, 1208 (9th Cir.2010); *Pearson v. Muntz,* 606 F.3d 606, 608–09 (9th Cir. 2010); *Hayward v. Marshall,* 603 F.3d 546, 563 (9th Cir.2010) (en banc).

Under California law, with respect to an eligible "life prisoner," the BPH "must 'normally set a parole release date' before the minimum term has been served," but "an inmate shall be found unsuitable for parole and denied parole if, in the judgment of the [BPH], the prisoner will pose an unreasonable risk of danger to society if released from prison." *In re Dannenberg,* 34 Cal.4th 1061, 1078, 1080, 23 Cal.Rptr.3d 417, 104 P.3d 783 (2005) (quoting 15 C.C.R. § 2402(a)); *see also In re Lawrence,* 44 Cal.4th 1181, 1204, 82 Cal.Rptr.3d 169, 190 P.3d 535 (2008). The BPH determines whether a prisoner is presently too dangerous to be released on parole by examining criteria set forth in regulations. *See*

---

**2.** The California Supreme Court has explained: "When a defendant suffers multiple convictions, sentencing for some of which is precluded by operation of § 654, an acceptable procedure is to sentence the defendant for each count and stay execution of sentence on certain of the convictions to which § 654 is applicable. Such stay is to be effective pending the successful service of sentence for the more serious conviction, at which time the stay is to become permanent." *People v. Miller,* 18 Cal.3d 873, 886, 135 Cal.Rptr. 654, 558 P.2d 552 (1977); *People v. Beamon,* 8 Cal.3d 625, 640, 105 Cal.Rptr. 681, 504 P.2d 905 (1973); *see also People v. Crabtree,* 169 Cal.App.4th 1293, 1327, 88 Cal.Rptr.3d 41 (2009) (parenthetically referencing *Miller*).

15 C.C.R. § 2402; *Irons,* 505 F.3d at 851–52; *Biggs v. Terhune,* 334 F.3d 910, 915–16 (9th Cir.2003). The criteria set by regulation reads:

(b) All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, California including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

(c) The following circumstances each tend to indicate unsuitability for release. These circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate unsuitability include:

(1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:

(A) Multiple victims were attacked, injured or killed in the same or separate incidents.

(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.

(C) The victim was abused, defiled or mutilated during or after the offense.

(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.

(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

(2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

(3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.

(4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

(5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.

(6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

(d) The following circumstances each tend to show that the prisoner is suitable for release. The circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate suitability include:

(1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or com-

mitting crimes with a potential of personal harm to victims.

(2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for Crime. The prisoner committed his crime as the result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

(6) Lack of Criminal History. The prisoner lacks any significant history of violent crime.

(7) Age. The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

(9) Institutional Behavior. Institutional activities indicate an enhanced ability to function within the law upon release.

15 C.C.R. § 2402(b), (c), (d). Additionally, the "Board of Prison Terms shall not require, when setting parole dates, an admission of guilt to any crime for which an inmate was committed." Cal. Pen.Code § 5011(b).

The key inquiry is not whether "some evidence" supports the presence or absence of a particular § 2402 factor, rather, the key inquiry is whether some evidence supports the conclusion that the prisoner currently poses an unreasonable risk of danger to society. *See In re Lawrence,* 44 Cal.4th at 1210, 1227, 82 Cal. Rptr.3d 169, 190 P.3d 535; *In re Roderick,* 154 Cal.App.4th 242, 263, 65 Cal.Rptr.3d 16 (2007); *In re Lee,* 143 Cal.App.4th 1400, 1408, 49 Cal.Rptr.3d 931 (2006); *see also Cooke,* 606 F.3d at 1214. There is "some evidence" to support a finding if there is at least "a modicum" of evidence. *Lawrence,* 44 Cal.4th at 1226, 82 Cal.Rptr.3d 169, 190 P.3d 535. There also must be a nexus between the factors that are cited by the BPH or the Governor and the determination of current dangerousness. *See Lawrence,* 44 Cal.4th at 1210, 82 Cal.Rptr.3d 169, 190 P.3d 535; *In re Rico,* 171 Cal. App.4th 659, 686, 89 Cal.Rptr.3d 866 (2009); *In re Palermo,* 171 Cal.App.4th 1096, 1107, 90 Cal.Rptr.3d 101 (2009). The denial of parole will not be upheld where the BPH "attaches significance to evidence that forewarns no danger to the public or relies on an unsupported conclusion." *In re Tripp,* 150 Cal.App.4th 306, 313, 58 Cal.Rptr.3d 64 (2007).

With respect to the commitment offense, the California Supreme Court has explained:

[T]he Board or the Governor may base a denial-of-parole decision upon the circumstances of the offense, or upon other immutable facts such as an inmate's criminal history, but some evidence will support such reliance only if those facts support the ultimate conclusion that an inmate continues to pose an unreasonable risk to public safety. Accordingly, the relevant inquiry for a reviewing court is not merely whether an inmate's crime was especially callous, or shock-

ingly vicious or lethal, but whether the identified facts are probative to the central issue of current dangerousness when considered in light of the full record before the Board or the Governor. *Lawrence,* 44 Cal.4th at 1221, 82 Cal. Rptr.3d 169, 190 P.3d 535. The nature of the commitment offense may combine with other factors, such as post-incarceration history or current mental state and demeanor, to support a finding of unreasonable dangerousness. *See id.* at 1214, 82 Cal.Rptr.3d 169, 190 P.3d 535; *see also Hayward,* 603 F.3d at 562. Depending upon the circumstances, factors such as the passage of time and the prisoner's age may make continued reliance on unchanging factors like the nature of the commitment offense unreasonable. *See Lawrence,* 44 Cal.4th at 1218–19, 1221, 82 Cal. Rptr.3d 169, 190 P.3d 535; *Roderick,* 154 Cal.App.4th at 277, 65 Cal.Rptr.3d 16; *In re Elkins,* 144 Cal.App.4th 475, 498–500, 50 Cal.Rptr.3d 503 (2006); *Lee,* 143 Cal. App.4th at 1412, 49 Cal.Rptr.3d 931.

### DISCUSSION

■ The F & R stated that the Ninth Circuit has held that a petitioner's commitment offense may be solely relied upon as the basis for denying parole when the petitioner has yet to serve the minimum term required by the sentence. *See* Court's Docket Doc. No. 19 at 12. The F & R then states that George was sentenced to 17 years, was committed to prison on September 3, 1993, and that he will not reach 17 years until 2010. *See id.* The F & R concludes that, because George was denied parole in 2007, he had not yet reached his minimum sentence and it was appropriate to rely on the commitment offense. *See id.*

George objects and contends that he began his incarceration in 1991. After reviewing the record, the Court agrees with George that he started serving his sentence in 1991. The crime and George's arrest occurred on November 28, 1989. A 2002 psychological report states that he was received in the California Youth Authority on January 28, 1991, following a jury trial and conviction for second degree murder. *See* Petition Exhibits Exhibit A.[3] The Court of Appeal opinion states that George was committed to state custody but housed in the California Youth Authority. *See* Objections Exhibit B. The February 15, 2007, BPH hearing transcript states that the hearing occurred at Chuckawalla Valley Prison and that George was received from Riverside County on March 21, 1991, for second degree murder. *See* Transcript at p. 2:3–7. Finally, a legal status summary reads that George's "life term starts 3–21–91," and that he was sentenced on January 28, 1991. *See* Objections Exhibit A. The record is somewhat confusing in that the 2007 Life Prisoner Evaluation (which the F & R relied upon) and the 2002 psychological report both indicate that George was received by CDC on September 3, 1993. However, in light of the hearing transcript, the date of imposition of sentence, the Court of Appeal opinion, and the legal status summary, the Court finds that George began serving his 15 year sentence in 1991.

Because George began serving his sentence in 1991, 16 years had elapsed by the time of his February 17, 2007, hearing date. George thus had eclipsed his minimum term when he appeared before the BPH. The F & R is based on the premise that George had not yet completed his

---

**3.** The same report, however, does state that George was received by CDC on September 3, 1993.

minimum term. The Court therefore cannot adopt the F & R's rationale.

■ Additionally, although the BPH may rely on the circumstances of the offense in order to deny a parole date, such a decision will be upheld only if there is something about the facts of the crime that continue to show that the prisoner is currently an unreasonable risk. *See Lawrence,* 44 Cal.4th at 1214, 1221, 82 Cal.Rptr.3d 169, 190 P.3d 535. There must be a nexus or an explanation that identifies what about the crime makes the prisoner unreasonably dangerous. *See id.* at 1210, 82 Cal.Rptr.3d 169, 190 P.3d 535; *Rico,* 171 Cal.App.4th at 686, 89 Cal.Rptr.3d 866; *Palermo,* 171 Cal.App.4th at 1107, 90 Cal. Rptr.3d 101. The F & R does not analyze how the facts of the crime show that George remains an unreasonable threat to the public. This is an additional reason why the Court cannot adopt the F & R.

■ The Court agrees with the BPH that the facts of the commitment offense are very troubling. Officer Garcia approached multiple individuals in a known drug trafficking area and was attacked for his efforts. Although George did not initiate the melee, he was more than just a bystander. George took a shotgun, pointed it at Officer Garcia, and shot. This all occurred while Garcia was trying to keep Armendariz from getting his service revolver. In other words, George inserted himself into the fight to such a degree that his actions appear to have been intended to take the life of Garcia. Garcia's struggle was so intense that he had to resort to biting Armendariz in order to gain control of his revolver. The danger and horror of being outnumbered, unable to gain control of the means with which to defend oneself, and then literally staring down the barrel of a loaded shotgun, all in the course of one's duty to protect the public, is egregious.

Nevertheless, the Court cannot find that the facts of the crime or the other considerations mandated by 15 C.C.R. § 2402 show that George is *currently* an unreasonable danger to society. George was under the influence of narcotics and was 17 years old at the time of the offense. Drugs, the dangers associated therewith, and the plea of a misguided and dangerous friend appear to have been the key factors in the crime. However, seventeen years had passed from the crime to the February 2007 hearing. In that period, George had been actively involved in Narcotics Anonymous, Alcoholics Anonymous, and Mulati Islami. *See* Transcript at 36; Petition Exhibit D. There is no record of George taking any narcotics or alcohol since he has been in custody, and George was able to identify the fifth step of the Mulati Islami program, which no other inmate had been able to do in the experience of one BPH member. *See* Transcript at 40. The most recent psychological report also states that George's addictions were in remission. *See* Transcript at 36. George had upgraded himself vocationally with a welding certification, *see* Transcript at 26, obtained a GED, *see* Transcript at 29, tutored in literacy programs, *see* Transcript at 31, had viable post-incarceration plans, *see* Transcript at 57, had the support of friends and family, *see* Transcript at 20–24, and had never received any serious rules violations. *See* Transcript at 56. No one has found that George's institutional behavior has been violent or otherwise problematic. The most recent psychological report was positive, found that George would constitute a low risk if released, and noted that George had shown remorse about, and good understanding of, his crime.[4] *See* Transcript at 36–39, 56–57.

---

4. George has also submitted letters of apology that were dated December 28, 2001, and directed to Garcia and the Riverside Police Department. *See* Petition Exhibit B.

These facts indicate that George has successfully addressed his narcotics addiction and he is not likely to place himself in situations similar to those of November 28, 1989.

The BPH did note that George had a previous criminal history. That history ran from age 13 through age 17, i.e. the time of the crime. The prior crimes were burglary at age 13, various drug related offenses, failure to adjust, and apparently some form of trespass at his school. *See* Transcript at 15–17; Petition Exhibit D. There is no indication that these offenses were violent. *Cf. In re Scott*, 133 Cal. App.4th 573, 602, 34 Cal.Rptr.3d 905 (2005). As discussed above, however, George actively participated in drug treatment programs and has been diagnosed as being in remission. Further, it has been recognized that a petitioner's young age is a relevant consideration in the parole context. *See Rosenkrantz v. Marshall*, 444 F.Supp.2d 1063, 1084–85 (C.D.Cal.2006); *In re Barker*, 151 Cal.App.4th 346, 376–77, 59 Cal.Rptr.3d 746 (2007); *Elkins*, 144 Cal. App.4th at 500, 50 Cal.Rptr.3d 503. *Rosenkrantz, Barker*, and *Elkins*, have noted "the general unreliability of predicting violence is exacerbated in a case by ... petitioner's young age at the time of the offense [and] the passage ... of nearly twenty years since that offense was committed." *Rosenkrantz*, 444 F.Supp.2d at 1084; *Barker*, 151 Cal.App.4th at 376, 59 Cal.Rptr.3d 746; *Elkins*, 144 Cal.App.4th at 500, 50 Cal.Rptr.3d 503. Here, George was 17 years old at the time he fired the single shotgun round, seventeen years had passed from the time of the crime to the hearing, and more than twenty years had passed since his first juvenile crime to the time of the hearing. During that passage of time, George received no serious rules violations while in custody. The Court finds that George's non-violent juvenile record is not probative of current dangerousness.

Finally, the BPH stated that additional therapy was needed in order for George to cope with stress in an appropriate manner. However, this is contrary to the psychological reports. The 2004 psychological support characterized George's participation in drug treatment programs as "outstanding," the 2004 and 2002 psychological reports indicate that George has very good insight and understanding of his crime, and critically none of the reports indicate that George requires more or additional therapy.[5] *See* Petition Exhibit A. The BPH seemed to focus on the commitment offense and George's juvenile criminal history as the reason why additional therapy was needed. However, as discussed above, George's juvenile criminal history was non-violent and seventeen years had elapsed from the time of the commitment offense. In that time, George gained insight and understanding, participated appropriately in drug treatment programs, and received no serious or violent disciplinary measures in prison. Given the psychological assessments, the passage of time, and George's institutional behavior, there is not some evidence that George needs additional therapy to safely cope with stress. *See Cooke*, 606 F.3d at 1215 (rejecting same statement by a BPH panel under nearly identical circumstances). This rationale does not show current dangerousness. *See id.*

In the absence of an expressly identified nexus, the Court does not see that the circumstances of the offense alone reflect a current level of unreasonable dangerousness. Additional facts, besides the com-

---

5. The reports do recommend that George continue with drug treatment programs such as Narcotics Anonymous. See Petition Exhibit A. But there is no indication that additional therapy is need to cope with stress. *See id.*

mitment offense, are necessary to show that George poses a current threat. The BPH did note George's criminal history, but the non-violent nature of the offenses, the young age at which those offenses have occurred, the seventeen to twenty-one years of elapsed time, and George's apparently successful participation in drug treatment programs all severely mitigate George's juvenile record. Also, the passage of time, George's participation in drug treatment programs and behavior in prison, and the psychological evaluations show that, contrary to the conclusory assertion of the BPH, additional therapy in order to cope with stress is not necessary. The Court cannot find a nexus between the commitment offense and George's prior criminal history and the finding of current dangerousness. *See Lawrence,* 44 Cal.4th at 1210, 82 Cal.Rptr.3d 169, 190 P.3d 535; *Palermo,* 171 Cal.App.4th at 1107, 90 Cal. Rptr.3d 101. There is not "some evidence" to support the BPH's conclusion that George currently poses an unreasonable risk to the public. *See Cooke,* 606 F.3d at 1211–15 *Lawrence,* 44 Cal.4th at 1210, 1221, 1227, 82 Cal.Rptr.3d 169, 190 P.3d 535; *Tripp,* 150 Cal.App.4th at 313, 58 Cal.Rptr.3d 64. George's petition is meritorious.

### CONCLUSION

The facts relied upon by the BPH do not amount to "some evidence" that George currently poses an unreasonable risk of danger to the public. The only other facts presented and considered constitute evidence that would support parole under § 2402(d). As such, the denial of a parole date and the subsequent affirmance by the state courts were "an unreasonable application of the California 'some evidence' standard" and/or were "based on an unreasonable determination of the facts in light of the evidence." *Cooke,* 606 F.3d at 1208, 1216 *Hayward,* 603 F.3d at 563. The

Court will grant George's petition for *habeas corpus.*

Accordingly, IT IS HEREBY ORDERED that:

1. The Court declines to adopt the Findings and Recommendation of the Magistrate Judge;

2. Petitioner's writ of habeas corpus is GRANTED;

3. Within thirty (30) days of service of this order, the California Board of Parole Hearings must calculate a term for Petitioner in accordance with the requirements of California Penal Code § 3041, with credit for time since the February 15, 2007 decision as if parole had been granted, and any other term credit to which he is entitled by law; and

4. The Clerk of the Court is DIRECTED to enter judgment in favor of Petitioner.

IT IS SO ORDERED.